UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VINCENT BABICHEV,

   Petitioner,

vs.          Case No. 3:19-cv-792-BJD-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

   Respondents.

_____

## **ORDER**

### I. **STATUS**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).   Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 6).   Petitioner submitted a Reply (Doc. 7).[1]

_____

[1] Respondents filed Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 6).   The Court hereinafter refers to the exhibits as "Ex."   The Court references the Bates stamp numbers at the bottom of each page of the exhibit.   Otherwise, the page number on the exhibit will be referenced.   For the Petition, Response, and Reply, the Court references the docket and page numbers assigned by the electronic filing system.

Petitioner challenges a state court (Duval County) conviction for murder in the second degree.   He raises seven grounds in the Petition.

## II.   EVIDENTIARY HEARING

Petitioner seeks an evidentiary hearing in this Court.   Petition at 52. "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."   Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020).   See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

Of note, "[w]here a petitioner fails to allege sufficient facts to satisfy the prejudice prong of the Strickland[2] standard, it is unnecessary to hold an

---

2 Strickland v. Washington, 466 U.S. 668 (1984).

evidentiary hearing to resolve disputed facts relating to the allegedly deficient performance of trial counsel." Barksdale v. Dunn, No. 3:08-CV-327-WKW, 2018 WL 6731175, at *108 (M.D. Ala. Dec. 21, 2018) (not reported in F. Supp.) (citing Bester v. Warden, 836 F.3d 1331, 1339-40 (11th Cir. 2016)), cert. denied, 141 S. Ct. 2523 (2021). Furthermore, if the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted).

Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Lee v. GDCP Warden, 987 F.3d 1007,

3

1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254), <u>cert. denied</u>, No. 21-5753, 2021 WL 5763176 (U.S. Dec. 6, 2021).   For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In doing so, a federal district court must employ a very deferential framework. <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>McKiver v. Sec'y, Fla. Dep't of Corr.</u>, 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), <u>cert. denied</u>, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the

> United States on a question of law or reaches a
> different outcome than the Supreme Court in a case
> with "materially indistinguishable facts." Williams
> v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146
> L.Ed.2d 389 (2000).   "Under the 'unreasonable
> application' clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle" from Supreme Court
> precedents "but unreasonably applies that principle to
> the facts of the prisoner's case." Id. at 413, 120 S. Ct.
> 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions

where the state court's determinations are unreasonable, that is, if no

fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied

clearly established federal law to reasonably determined facts when

determining a claim on its merits, "a federal habeas court may not disturb the

state court's decision unless its error lies 'beyond any possibility for fairminded

disagreement.'"   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam)

(quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's

finding of fact, whether a state trial court or appellate court, is entitled to a

presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's

factual determinations are presumed correct, absent clear and convincing

evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. §

2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th

Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then

presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).   Pursuant to this standard, "a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Strickland, v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   We need not address both prongs if a petitioner makes an insufficient showing on one prong.   Id. at 697, 104 S. Ct. 2052." Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam), petition for cert. filed, (U.S. Oct. 14, 2021) (No. 21-5959).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687), petition for cert. filed, (U.S. Nov. 23, 2021).   Additionally,

7

because "[t]he standards created by <u>Strickland</u> and §
2254(d) are both 'highly deferential,' . . . when the two
apply in tandem, review is 'doubly' so.   <u>Harrington [v.
Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations
and quotation omitted).   Thus, under § 2254(d), "the
question is not whether counsel's actions were
reasonable.   The question is whether there is any
reasonable     argument     that     counsel     satisfied
<u>Strickland</u>'s deferential standard."   <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020), <u>cert.</u>

<u>denied</u>, 141 S. Ct. 1721 (2021).

With respect to an ineffective assistance challenge to the voluntariness

of a guilty or no contest plea, a petitioner must show there is a "reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial."   <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

The ineffective assistance of counsel may require a plea be set aside on the

ground that it was involuntary because voluntariness implicates not only

threats and inducements but also ignorance and incomprehension.   <u>Finch v.

Vaughn</u>, 67 F.3d 909, 914 (1995) (citations omitted).

This Court must be mindful that in a post-conviction challenge to a guilty

plea, the representations of the defendant, his counsel, and the prosecutor at

the plea hearing, plus the findings of the judge, constitute "a formidable

barrier."   <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).   Indeed, a

defendant's solemn declarations in open court carry a strong presumption of

8

verity.  Thus, later contentions by a defendant contrary to the record may be deemed wholly incredible in light of the record.

## V.   GROUND ONE

In his first ground, Petitioner seeks equitable tolling of the one-year limitation period for filing a federal habeas petition.  Petition at 12-16. Respondents concede that the Petition is timely.  Response at 2-6.  As such, the Court will not employ an equitable tolling analysis.

## VI.   GROUND TWO

In ground two, Petitioner raises a claim of ineffective assistance of trial counsel alleging counsel failed to file a motion to remove the court appointed interpreter and "appoint a different and competent interpreter."   Petition at 19.   The record shows he raised a comparable claim in his amended Rule 3.850 motion for post-conviction relief, ground one.   Ex. O at 83-90.   Relying on the standards set forth in Strickland and Hill, the circuit court summarily denied Petitioner's claim of ineffective assistance of trial counsel.   Ex. O at 159-62.

Before addressing Petitioner's claims of ineffective assistance of trial counsel, the circuit court succinctly set forth the appropriate standard of review:

> After entering a plea, a defendant who alleges he was misinformed or otherwise ill-served by counsel is entitled to post-conviction relief if he can

9

> demonstrate there is a reasonable probability that, but for counsel's errors, he would not have entered a plea but would instead have insisted on going to trial. In determining whether that reasonable probability exists, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial.

Id. at 159 (citing Grosvenor v. State, 874 So. 2d 1176, 1181-82 (Fla.) (finding in Hill, the United States Supreme Court set forth a two-part test for determining claims of ineffective assistance of counsel relating to guilty pleas: (1) a requirement that the defendant satisfy the deficient performance prong of Strickland and (2) a requirement that the defendant demonstrate a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial)), cert. denied, 543 U.S. 1000 (2004).

Petitioner appealed the denial of post-conviction relief. Ex. O at 257; Ex. Q; Ex. R. The 1st DCA affirmed per curiam. Ex. S. Petitioner moved for rehearing, and the 1st DCA denied rehearing. Ex. T. The mandate issued on May 7, 2019. Ex. S.

A brief procedural history will be provided for context.   The record demonstrates the following.   The Indictment charged one count of murder in the first degree and one count of tampering with evidence.   Ex. B.   The state filed a Notice of Intent to Seek Death Penalty and Request for Statement of Particulars of Mental Mitigation.   Ex. C.   The court found Petitioner competent to proceed.   Ex. D.   The court granted Petitioner's motions to suppress to the extent the defense sought to suppress the defendant's recorded interrogation at the police station.   Ex. E at 1.   In all other respects, the court denied the motions.   Id.

On February 12, 2015, Petitioner entered a Plea of Guilty and Negotiated Sentence, in his best interest, to the lesser included offense of murder in the second degree with a negotiated sentence of 42 years.   Ex. F.   The February 18, 2015 plea transcript demonstrates the following.   Defense counsel, Gonzalo Andux, announced Petitioner had authorized counsel to tender a plea of guilty to the lesser included offense of murder in the second degree with the understanding that Petitioner would be adjudicated guilty and sentenced to a term of 42 years in prison.   Ex. G at 5.   Mr. Andux told the court Petitioner did not have a felony record and there is an executed waiver of the Presentence Investigation Report.   Id. at 6.   Finally, Mr. Andux stated: "the plea would be

a plea of guilty because it is in his best interest."   Id.   Counsel then confirmed that he had gone over deportation consequences with Petitioner.   Id.

The prosecutor said, in light of the plea negotiations, the state would waive the death penalty.   Id. at 7.   The Court provided Petitioner, a native Russian speaker, with an interpreter.   Id. at 8.   Petitioner confirmed he wanted to enter the plea to the lesser included offense of second-degree murder. Id.   He said he had spoken with his counsel about the first-degree murder charge and the potential punishment for that offense, about the evidence in the case, and about possible defenses.   Id. at 9.   Upon inquiry, Petitioner said all of his questions and been answered to his satisfaction by counsel.   Id. Petitioner told the court he had no further questions of his counsel and was satisfied with counsel's performance.   Id, at 9-10.

The court announced its intention to accept Petitioner's plea to the lesser included offense of second-degree murder, adjudicate Petitioner guilty, and sentence him to the negotiated term of 42 years.   Id. at 10.   In response, Petitioner said that is his understanding of the terms and that is what he wants to do.   Id. at 11.   Petitioner confirmed he had received no promises other than the terms of the negotiated agreement, and no one had threatened, forced, or coerced him into entering a plea.   Id. at 12.   Petitioner assured the

court that he had not taken any medication and was not under the influence of any alcoholic beverages or drugs.   Id.

Petitioner said he is 44 years old and went to vocational school to be a cook.   Id. at 12-13.   With respect to his understanding of the proceedings, the following colloquy took place:

> THE COURT:   And is it fair to say that you understand some English?
>
> MR. BABICHEV: (In English) Yes.
>
> THE COURT:   All right.   And let the record reflect he answered yes to the question.
>
> And have you been able to follow my questions up to this point?
>
> MR. BABICHEV:   I have to think over your questions.
>
> THE COURT:   All right.   But you have understood them up to this point?
>
> MR. BABICHEVE:   More or less.
>
> THE COURT:   Well, what haven't you understood?
>
> MR. BABICHEV:   **After it was completely translated, then I completely understood.**
>
> THE COURT:   And that's what I mean.   With using a translator you were able to understand my questions?

MR. BIBICHEV:   Yes.

Ex. G at 13 (emphasis added).

Petitioner stated both his attorney and the interpreter went over the plea form with him.   Id. at 13-14.   Petitioner said he understood it.   Id. at 14.   He had no further questions about the form.   Id.   Petitioner noted it was his signature on the form.   Id.   Petitioner said the plea is in his best interest because he desires to avoid the possibility of the death penalty if convicted of first-degree murder.   Id. at 14-15.

Regarding the waiver of a Presentence Investigation Report (PSI), the court explained to Petitioner he was entitled to the report, but it had been announced that he was waiving that right so that the court could "immediately impose a sentence today consistent" with the agreement.   Id. at 15-16.   When asked if Petitioner wanted to waive the report, Petitioner responded, "I don't need that."   Id. at 16.   The court asked about the green waiver form, and Petitioner said, "[y]es.   I waive."   Id.   Petitioner added, he read the form, understood the form, and signed it.   Id.   He also acknowledged he was waiving certain constitutional rights by accepting the plea.   Id. at 16-18.

The state said there was no evidence (DNA or otherwise) known to the state that would exonerate Petitioner.   Id. at 18.   Mr. Andux agreed with that assessment.   Id.   He pointed out that some evidence had not been tested, but

the defense decided to forego further testing and plead.   <u>Id</u>. at 18-19.

Petitioner confirmed the above.   <u>Id</u>. at 20.   Petitioner said he understood that

he would be deported to Russia once he finished the terms of his incarceration.

<u>Id</u>.   He reiterated that he wanted to plead guilty to the lesser included charge.

<u>Id</u>.

> The state provided a factual basis for the plea:

>> Vasiliy Babichev, did on or between the 27th day of July 2010 and the 28th day of July 2010 in the county of Duval, state of Florida, unlawfully by an act imminently dangerous to another person and evidencing a depraved mind regardless for human life, although without any premeditated design to cause the death of any particular individual, did kill Vera Zadnepryanets, . . . a human being[.]

<u>Id</u>. at 21.

> The court found, based on the proffer and being well aware of the evidence based on previous court hearings, there was a factual basis for the charge of second-degree murder.   <u>Id</u>. at 21-22.   The court found Petitioner freely and voluntarily waived his right to a PSI so the court could immediately impose a sentence consistent with Petitioner's agreement with the state.   <u>Id</u>. Finally, the court found Petitioner entered his plea freely and voluntarily, "with a full understanding of the nature and consequences of the plea."   <u>Id</u>. In reaching this decision, the judge explained that he had observed Petitioner

throughout the colloquy, and he appeared to have understood the court's questions when assisted by the interpreter.   Id.   The court noted that Petitioner responded appropriately to the court's questions.   Id.   As such, the court accepted the plea.   Id.

The court sentenced Petitioner to 42 years in prison, in conformance with the plea agreement.[3]   Id. at 22-23.   The state nol-prossed count two, the tampering with evidence count.   Id. at 23.

The Honorable James Daniel, the circuit judge who tried the case, denied post-conviction relief.   He noted that Petitioner is a Russian whose first language is Russian, and he immigrated to the United States in 1999.   Ex. O at 159.   Of import, the record shows Petitioner's counsel filed a Motion to Incur Certain Specified Costs, and the court granted the motion and authorized the costs of a court certified interpreter.   Id. at 255-56.

Petitioner claims Larisa Daly, the court certified interpreter, did not accurately translate court hearings, including the plea hearing.   Id. at 159.   As such, Petitioner contends he would not have entered a plea but proceeded

---

3 Petitioner's January 29, 2016, Motion to Correct Illegal Sentence, contending his sentence of 42 years constitutes an illegal sentence warranting re-sentencing, is pending before the state court.   Ex. I.   See Response at 4.   See also the state court docket, Case 16-2010-CF-008398 (last visited December 17, 2021).

to trial because he did not correctly understand the nature of the evidence and the legal aspects of his defense.   Id.

Being both the trial judge and the post-conviction judge, the court was very familiar with Petitioner's ability to understand English and interact with his counsel and the court.   Id. at 160.   The judge noted that for three years he had many significant opportunities to observe and interact with Petitioner. Id.   In fact, the court looked to its previous rulings finding Petitioner competent and able to engage appropriately with his interpreter and understand the court's instructions.   Id.   Indeed, the court had previously found that Petitioner "has a better grasp of the English language than he has maintained at times during this case."   Id.   Notably, Petitioner understood questions before the interpreter had an opportunity to translate.   Id.   Again, after an evidentiary hearing on the motions to suppress, the court was convinced Petitioner understood consent forms and verbal explanations.   Id.

Of import, the court found it significant that Petitioner worked steadily and consistently in jobs that required him to understand English, particularly as a cook at the Mayo Clinic.   Id.   His supervisors attested to Petitioner's ability to understand directions and to communicate on the job, including understanding directions concerning unique diets of patients.   Id. at 160-61.

Of note, Petitioner was readily able to communicate to the officers his version of the events at the scene of the crime.   Id. at 161.   He also had the ability to read the first portion of the Miranda warnings.[4]   Id.

Admittedly Petitioner did not have the proficiency of a native English speaker, but with the services of a certified interpreter was able to understand the proceedings and the significance of his waivers and plea.   As he stated at the plea proceeding, "[a]fter it was completely translated, then I completely understood."   Ex. G at 13.   See Ex. O at 161.   Petitioner attested he had spoken with his counsel about the evidence and possible defenses.   Ex. G at 9. He said all questions had satisfactorily been answered by his counsel.   Id.

Plaintiff's representations to the court during the plea proceeding that he completely understood once the translator performed her translation carry a strong presumption of verity.   His current contentions to the contrary are simply not credible in light of the record.   Plaintiff admitted on the record that he accepted the plea bargain to avoid the possibility of the death penalty if convicted as charged.   He received the benefit of the bargain by avoiding the death penalty and obtaining a confirmed term of years in prison.   He may regret that decision, but he provided solemn declarations in open court that he

---

[4] Petitioner told the court at the plea proceeding that he read the waiver of PSI form and he understood it.   Ex. G at 16.

was satisfied, he had no additional questions, and was ready to proceed to sentencing.

Under these circumstances, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected Petitioner's claim for relief based on Strickland and Hill. Further, Petitioner has not shown the state court unreasonably applied Strickland and Hill or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry. Furthermore, the 1st DCA affirmed.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Ex. S. Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective. Thus, Petitioner has failed to demonstrate a Sixth Amendment violation under the United States Constitution. In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland and Hill or based on an unreasonable determination of the facts. As such, Petitioner is not entitled to habeas relief on ground two.

## VII.   EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend two grounds of the Petition, grounds 2A and 2E, are unexhausted and procedurally defaulted because Petitioner did not include them in his briefing on appeal of the denial of his amended Rule 3.850 motion. Response at 32-36, 60-63.   <u>See</u> Ex. Q.   Petitioner did not receive an evidentiary hearing on his post-conviction motion in the state court.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally

---

5  <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

6  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To

21

demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

On appeal of the denial of his post-conviction motion, Petitioner asked that the 1st DCA review the post-conviction court's denial in its entirety, but he selectively briefed only four issues.   Ex. Q at 5.   The issues raised in grounds 2A and 2E are not addressed in the brief.   Id.

As noted by Respondents, Response at 31-32, 60, traditionally, the 1st DCA will review only "those arguments raised and fully addressed in the brief." Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA) (2008) (per curiam). Instead of listing or making a passing reference to the grounds raised below, an appellant must present argument for each ground to be considered on appeal.   Marshall v. State, 854 So. 2d 1235, 1252 (Fla. 2003) (per curiam).   If

merely speculative or unsupported grounds, they will not be considered. Cooper v. State, 856 So. 2d 969, 977 n.7 (Fla. 2003) (per curiam), cert. denied, 540 U.S. 1222 (2004).   As such, in order to preserve an argument for review, an appellant must raise and fully address the argument in his brief on appeal, and if the appellant fails to do so, the claim will be considered to be waived. Wade v. State, 201 So. 3d 806, 807 (Fla. 1st DCA 2016) (per curiam).

In this instance, Petitioner failed to present substantive arguments as to the circuit court's rejection of his claims now presented in grounds 2A and 2E. Petitioner's summary request that the appellate court review the post-conviction court's denial in its entirety is insufficient for exhaustion purposes in the 1st DCA.   Thus, "Petitioner's having chosen not to argue that the lower court erred in summarily denying those claims [now labeled grounds 2A and 2E], he failed to invoke the state court's established appellate review process as to those claims, and thus failed to exhaust them."   Ulland v. Comerford, No. 5:15cv111/MW/EMT, 2016 WL 2909174, at *14 (N.D. Fla. Apr. 26, 2016) (not reported in F. Supp.) (citation omitted), report and recommendation adopted by 2016 WL 2886333 (N.D. Fla. May 17, 2016) (not reported in F. Supp.).   See Cooks v. Sec'y, Dep't of Corr., No. 4:12cv403-WS/CJK, 2015 WL 4601009, at *5 (N.D. Fla. July 29, 2015) (not reported in F.Supp.3d) (relying on the 1st DCA's requirements and finding Petitioner procedurally defaulted

23

his claim and is foreclosed from federal review by failing to raise an issue in an appeal brief following summary denial of a post-conviction motion).

After due consideration, the Court deems grounds 2A and 2E abandoned as Petitioner failed to fully brief the claims on appeal after a summary denial of the post-conviction motion.[7]   The claims are unexhausted and procedurally defaulted.   Petitioner has not shown cause and prejudice, nor that manifest injustice will result if the claims are not addressed on their merits. Furthermore, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

The Court finds grounds 2A and 2E unexhausted and procedurally defaulted.   As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice

---

[7] Relying on Rule 9.141, Fla. R. App. P (briefs are not required upon summary denial of post-conviction motions), the Fifth District Court of Appeal does not join in the 1st DCA's position concerning exhaustion under these circumstances.   Apparently, the 1st DCA is resolute in its position that if an appellant does not fully brief an issue on appeal of denial of a post-conviction motion, the claim is deemed abandoned.   See Sutherland v. State, 305 So. 3d 776, 779 (Fla. 1st DCA 2020) (after the trial court summarily denied the post-conviction motion, the 1st DCA on September 4, 2019 granted a belated appeal, and, on appeal, the appellant failed to fully address all grounds and the grounds that were not fully briefed were deemed abandoned by the 1st DCA, per its holding in Watson).   Therefore, this Court will not address the merits of grounds 2A and 2E as these claims are unexhausted and procedurally defaulted.

exception to overcome the default, grounds 2A and 2E are due to be denied as procedurally barred.

## VIII.   GROUND 2B

In ground 2B, Petitioner claims his counsel, Mr. Andux, was ineffective for failure to advise Petitioner he had a viable defense of alibi as Petitioner, "spent the night at his friends Nelli and Yasha's residence."   Petition at 29. Petitioner also submits that he had another alibi defense that another person or persons had committed the crime based on the fact that there was a notation by counsel that three middle-aged white women visited the victim the day before the victim was killed and based on the fact that the case investigator learned someone in the Russian community had said the eighty-year-old victim was either a sexual predator or worked as a prostitute.   Id.   Petitioner contends his plea was involuntarily entered because Mr. Andux failed to advise Petitioner of a viable defense.   Id. at 28.

Petitioner raised a comparable claim in ground three of his amended Rule 3.850 motion, exhausting his state court remedies.   Ex. O at 92-97. Petitioner appealed, id. at 257, and the 1st DCA affirmed.   Ex. S.

Of import, the circuit court, in denying post-conviction relief, considered the evidence presented at the suppression hearing.   Ex. O at 163.   In assessing Petitioner's claim, the court summarized the relevant facts,

including the details of the officers' interview of the Petitioner's friends, the Shumilovs (Nellie and Yashas [sic] Shumilov), and noted, the Shumilovs, "confirmed that it was possible that the Defendant arrived at their home on July 27, between the hours of 10:00 p.m. to 11:00 p.m. and that the Defendant spent the night on their couch."   Ex. O at 187.   But, the Shumilovs could not say what time Petitioner went to sleep or what time he left, but they were certain he was not there when they woke up.   Id.   Mrs. Shumilov said someone called the house at approximately 6:00 a.m. on July 28, but they did not answer.   Id.   Both Shumilovs said Petitioner called them between 8:00 a.m. and 9:00 a.m. and told them something had happened to the victim as she was lying on the floor and he did not know if she was dead or alive.   Id.   Mr. Shumilov asked Petitioner whether he had called the police, and Petitioner responded no, but said he would call the police.   Id.

Based on the evidence presented at the suppression hearing, it is apparent the Shumilovs could not attest as to when Petitioner departed their home, and if they changed their story and claimed to have knowledge, their testimony would have been impeachable.   The circuit court, in reviewing Petitioner's post-conviction claim, took this evidence into consideration and found:

They could not, however, tell the police when
[Petitioner] left.  He was not there when they got up
in the morning.  Of course, these friends might have
told a different story under oath at trial.  But they
could have been impeached by any prior inconsistent
statements so their value as alibi witnesses seems
highly compromised and entirely too tenuous to risk
the death penalty.  Also, according to evidence at the
suppression   hearing,   the   Defendant's   former
girlfriend told the police the Defendant called her
about 5:30 a.m. on the day of the murder to tell her his
landlady was dead, again suggesting he did not have a
particularly good alibi, as the murder was not reported
until after 8:00 a.m.  Where the risk of going to trial
was extremely high and the outcome was possibly a
death sentence, counsel cannot be deemed ineffective
for advising the Defendant an alibi defense was not
useful or useable.

Id. at 163 (citation to exhibits omitted).

Petitioner appealed the denial of this ground and included an argument

that the circuit court failed to address his contentions concerning other people

visiting the victim's residence the day before she was killed and the fact that

the victim may have engaged in illegal activities.  Ex. Q at 13-15.  He urged

the 1st DCA to find there was evidence that someone else committed the crime,

referencing the three unknown women who were seen visiting the victim and

the information that the victim was engaged in illegal activity.  Id. at 14.  The

1st DCA affirmed per curiam without opinion and denied rehearing and a

request for a written opinion.  Ex. S; Ex. T.

As noted by Respondents,

> when a state court issues an order that summarily
> rejects without discussion *all* the claims raised by a
> defendant, including a federal claim that the
> defendant subsequently presses in a federal habeas
> proceeding, the federal habeas court must presume
> (subject to rebuttal) that the federal claim was
> adjudicated on the merits. We see no reason why this
> same rule should not apply when the state court
> addresses some of the claims raised by a defendant but
> not a claim that is later raised in a federal habeas
> proceeding.

Johnson v. Williams, 568 U.S. 289, 293 (2013).

Therefore, this Court must presume that the federal claim at issue was adjudicated on its merits by the Florida courts. Upon review, this presumption has not been adequately rebutted. Furthermore, "while under Wilson it is presumed that the First DCA adopted the same reasoning as the circuit court, it must also be presumed that Petitioner's contention that the circuit court failed to address a portion of his claim was also adjudicated and found to be without merit by the appellate court." Response at 39-40.

As a result, the Court presumes the whole of Petitioner's claim was adjudicated on its merits within the meaning of 28 U.S.C. § 2254(d); therefore, the 1st DCA's decision is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable application of the law. The state court's adjudication of the claim

is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u> or based on an unreasonable determination of the facts.   Thus, ground 2B is due to be denied.

Petitioner cannot now go behind his sworn declarations.   He expressed satisfaction with counsel and his preparations and legal advice in open court. Although Petitioner may now be dissatisfied with his decision to enter into a plea to a negotiated sentence, the record shows the sentence complies with the plea agreement and the trial court was assured by Petitioner that he was satisfied with counsel's legal representation and preparation.

Counsel did not perform deficiently by failing to advise Petitioner to proceed to trial and present an alibi defense.   Based on the findings of the trial court, it is quite apparent that Petitioner could not show he was elsewhere. His purported alibi witnesses could not sufficiently establish "his presence" for the entire time required under the law.   <u>Constantino v. State</u>, 224 So. 2d 341, 342 (Fla. 3rd DCA 1969) (per curiam) (the defense must cover the entire time when the presence of the defendant was required to accomplish the crime). <u>See</u> <u>Hill v. Inch</u>, No. 3:18-cv-2207-LC-MJF, 2020 WL 6828844, at *11 (N.D. Fla. Nov. 5, 2020) (finding that neither of the witnesses had personal knowledge of the defendant's whereabouts at the time of the crime), <u>report and recommendation adopted by</u> 2020 WL 6826204 (N.D. Fla. Nov. 20, 2020).   The

Shumilovs said they did not know when Petitioner departed the house; therefore, they could not sufficiently establish his presence for the entire time required under law.

Petitioner's former girlfriend's testimony at the suppression hearing also substantially curtailed any real consideration of raising an alibi defense. Margarita Ntale told Detective Slayton Petitioner contacted her at approximately 4:30 a.m. on July 28 and asked her to come to his house.   Ex. O at 190.   Ms. Ntale told the detective she refused the invitation, and Petitioner called her again around 5:30 a.m. and said the lady he lives with was dead.[8]   Id.   The murder was not reported until after 8:00 a.m.   Id. at 163. The circuit court concluded, "[w]here the risk of going to trial was extremely high and the outcome was possibly a death sentence, counsel cannot be deemed ineffective for advising the Defendant an alibi defense was not useful or useable."   Id.

Petitioner is not entitled to habeas relief on this ground.   Petitioner's witnesses could not say when he left their residence on the day of the murder, and counsel's notation concerning three middle-aged women visiting the victim the day before she was killed did nothing to buoy a defense that their visit

---

[8] Petitioner told the detectives he arrived at home around 8:00 a.m. to 9 a.m. on July 28th, and discovered the victim lying face down in the garage.   Ex. E at 3.

resulted in the victim's death.   Finally, the assertion that the eighty-year-old victim may have been a sexual predator or working as a prostitute based on a statement from an unnamed individual in the Russian community was certainly not of the weight to reject a favorable plea and risk facing the death penalty at trial.   There is just not enough substance to these instances to forego a very favorable plea offer when charged with first degree murder and facing the possibility, upon trial, of receiving the penalty of death.   In short, there was no reasonable basis for counsel to advise Petitioner he had a viable defense based on these factors.

Here, AEDPA deference will be given to the state court decision. Ground 2B is due to be denied as Petitioner is not entitled to federal habeas relief.

## IX.   GROUND 2C

In ground 2C, Petitioner raises a claim of ineffective assistance of counsel for sending a University of Miami law student, Jessica Shriber, to discuss evidence with Petitioner, resulting in an involuntary plea.   Petition at 34.   Petitioner claims, Ms. Shriber, who spoke Russian, visited Petitioner at the Duval County jail two weeks prior to trial and showed Petitioner photocopies of pictures, claiming the photocopies depicted the inside of Petitioner's truck and three blue dots marking locations of blood on the ignition

of the truck and on water bottles located in a cup holder in the middle seat of the truck.   Id. at 34-35.   When Petitioner asked Mr. Andux about these photocopies and whether the state had discovered blood inside the cabin of the truck, Mr. Andux said he did not think the state had discovered blood inside the cabin of the truck.   Id.   Mr. Andux told Petitioner he did not know where Ms. Shriber obtained the photocopies.   Id.   Petitioner claims he "was still confused" and did not know for sure if blood had been found in the truck's cabin. Id. at 35.   Petitioner eventually received discovery showing no blood was found inside the truck.   Id. at 35-36.

The record shows, long before the February 18, 2015 plea proceeding, the trial court entered its September 17, 2014, order granting in part and denying in part defendants' motions to suppress.   Ex. E.   The order stated the detectives found blood in the bed of Petitioner's truck.   Ex. E at 4-5.   The detectives also found checks from the victim's account in the truck's glove box. Id. at 5.   Also of note, there was blood found scattered throughout the house, including Petitioner's room.   Id. at 6.

Petitioner raised a comparable claim in his amended Rule 3.850 motion. Ex. O at 98-101.   The circuit court denied this ground, opining:

> While there may not have been blood in the cab
> of the Defendant's truck, the testimony at the
> suppression hearing was that the police found blood in

the Defendant's room and other places in the residence as well as in the bed of the truck.   In fact, in Exhibit E of the Defendant's Amended Motion, a police report states that while the field test for blood was negative for the interior of the truck, **it was positive for the truck bed and the rear bumper.**   Whether there was blood inside the truck would not seem to be so critical a fact as to be the determinative reason the Defendant decided to enter a plea.   There is not a reasonable probability that, had the Defendant been advised there was no blood found inside the truck's cab, he would have risked trial where there was apparently blood on the truck and in his room.

Id. at 164 (emphasis added).

The 1st DCA affirmed.   Ex. S.   Thus, there is a qualifying state court decision.   In this case, AEDPA deference is due.   The record demonstrates the state court properly applied the two-pronged Strickland standard of review and recognized the applicability of Hill in this plea circumstance.   As such, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(a).

Upon review, the Court finds Petitioner has failed to show that the state court unreasonably applied Strickland and Hill or made an unreasonable determination of the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA's adjudication of the claim raised in ground 2C is not contrary to or an unreasonable application of Supreme Court law or

based on an unreasonable determination of the facts.   Therefore, ground 2C is due to be denied.

It was quite evident there was blood found in Petitioner's room, in the house, in the garage, and in the bed of Petitioner's truck.   Mr. Andux did not tell Petitioner blood had been found in the cab of the truck.   Although Petitioner now claims he remained "confused" after he spoke with Mr. Andux about Ms. Shriber's representations, Petitioner told the court at the plea proceeding that all of his questions had been answered to his satisfaction by counsel, Petitioner had no further questions, and he was satisfied and ready to plead.   Petitioner's solemn declaration in open court carries a strong presumption of verity.   This Court is unpersuaded by Petitioner's contention that he remained confused and his questions unanswered before he entered his plea as he stated otherwise at the plea proceeding.

Finally, there is no reasonable probability that, had the Petitioner been specifically advised no blood had been found inside the truck's cab, he would have gone to trial in light of the blood found in his room and in the bed of the truck.   This is particularly true as Petitioner had no supportable alibi defense and his girlfriend said he called as early as 4:30 a.m., wanting her to come to the house, and then Petitioner called again at 5:30 a.m., stating the landlady was dead.   The evidence against Petitioner was significant and he had no alibi

34

for the entire relevant period.   As such, Petitioner is not entitled to habeas relief on ground 2C.

## X.   GROUND 2D

Petitioner raised another claim of ineffective assistance of counsel in ground 2D, claiming his counsel misled him about the strength of the state's DNA evidence, which was actually contaminated, weak, and exonerated Petitioner.   Petition at 37-38.   Petitioner claims, had he been accurately advised, he never would have entered a best interest plea.   Id. at 39.

Upon review of the state court record, Petitioner raised a similar claim in his amended Rule 3.850 motion.   Ex. O at 101-104.   The circuit court denied this claim, first analyzing the document Petitioner claimed showed FDLE's DNA results.   Id. at 153-55.   The document is a typewritten request for analysis by the Jacksonville Sheriff's Office (JSO), containing the notation that it is submitted by G. L. Warkentien and received by Duane E. Anna on July 30, 2010.   Id. at 153.   There is a typewritten list of evidence, noting analysis requested.   Id. at 153-55.   Although there are handwritten notations and writing on this document, there is nothing indicating that this is an official's handwriting, either with the JSO or FDLE.

Of import, the circuit court found the document does not show any results.   Id. at 165.   Furthermore, at the plea proceeding, the state said there

35

was no exculpatory DNA evidence, and defense counsel agreed with that assessment.   Mr. Andux said he and his client discussed untested items prior to the entering of the plea but announced that the defense had decided to forego further testing and enter a plea.   On the record, Petitioner acknowledged this decision and confirmed that he wanted to proceed with the plea.

The circuit court after considering the above concluded, "[t]he Defendant has not demonstrated that he was misadvised about the nature of the DNA evidence.   The FDLE report he has attached does not exonerate him, as he claims, and counsel was not ineffective for misleading him on the State's evidence."   Id.

Clearly the report does not exonerate Petitioner.   It is simply a request for analysis.   Petitioner, on the record, announced he was willing to forego further testing in order to accept a plea in his best interest.   Petitioner received the benefit of the bargain and avoided going to trial and facing the possibility of the death penalty in a first-degree murder trial.

The state court's determination is consistent with federal precedent. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Ex. S.   Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In sum, the state court's adjudication of the

claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground 2D is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[9]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of

December, 2021.


_____
BRIAN J. DAVIS
United States District Judge


sa 12/27
c:
Vincent Babichev
Counsel of Record